STATE OF WEST VIRGINIA

FILED

**April 20, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **C.R. and B.R.-1**

**No. 20-0781** (Logan County 19-JA-143 and 19-JA-144)


**MEMORANDUM DECISION**


Petitioner Father B.R.-2, by counsel Mark Hobbs, appeals the Circuit Court of Logan County's September 9, 2020, order terminating his parental rights to B.R.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Donna Pratt, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in failing to give appropriate weight to his participation in a medically-assisted treatment program and finding that there was no evidence to show that he had meaningfully addressed, or would meaningfully address, the issues of abuse and neglect at issue.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Further, because one of the children and petitioner share the same initials, they will be referred to as B.R.-1 and B.R.-2, respectively, throughout this memorandum decision.

Further, the record shows that C.R. reached the age of majority before the court convened its final dispositional hearing. Because the child was eighteen, it appears that the court took no action in regard to petitioner's parental rights to C.R. As such, this case focuses on B.R.-1 and the circuit court's ruling in regard to that child.

In October of 2019, the DHHR filed an abuse and neglect petition alleging that petitioner and the mother abused drugs in the children's presence and failed to provide proper supervision. The petition further alleged that the parents traded food stamps for drugs, causing B.R.-1 to go to neighbors' homes to eat. According to the DHHR, the parents' lack of supervision caused then-five-year-old B.R.-1 to "run wild" and exhibit disruptive behavior in school. When Child Protective Services ("CPS") responded to the home, they confirmed that there was insufficient food. Further, petitioner admitted to illegally purchasing Suboxone and abusing methamphetamine. The CPS worker also observed signs of petitioner's recent intravenous drug use, which petitioner confirmed. Upon investigation, the DHHR further learned that the parents had a seventeen-year-old daughter, C.R., who they allowed to drop out of school and move in with her boyfriend at the age of sixteen. Petitioner then completed a drug screen that was positive for amphetamine, buprenorphine, and methamphetamine. Following the petition's filing, petitioner waived his preliminary hearing. In the order from the November 5, 2019, preliminary hearing, the circuit court ordered petitioner to submit to drug screens twice per week and to "sign a release of information in order for the WVDHHR to obtain . . . any records relevant to these proceedings."

Later in November of 2019, the DHHR filed a multidisciplinary team ("MDT") report that indicated that petitioner had not submitted to drug screens as ordered since the prior hearing. As a result of his failure to submit to screens, petitioner was unable to visit the children. The record shows that petitioner signed the report, evidencing his participation in the MDT meeting. Following the MDT meeting, petitioner stipulated to having a substance abuse problem that impaired his ability to properly parent the children. The court accordingly adjudicated petitioner of neglect. During the adjudicatory hearing, petitioner also moved for an improvement period, which the circuit court held in abeyance.

In March of 2020, the DHHR filed a motion to terminate petitioner's parental rights, alleging that petitioner tested positive for amphetamine several times throughout the proceedings and failed to meaningfully address the issues that led to the petition's filing. Petitioner thereafter filed a motion for a post-dispositional improvement period, which the circuit court denied at a hearing in July of 2020. During that motion hearing, petitioner presented testimony from a nurse practitioner who oversaw his participation in a medically-assisted substance abuse treatment program. According to the witness, petitioner began treating with her on December 20, 2020, at which point she began prescribing him Suboxone. The witness also testified that the goal for petitioner's completion of the program would be two years from initiation, although she further explained that completion would ultimately depend on petitioner feeling "stable enough to come down." The witness also testified that during his treatment, petitioner tested positive for methamphetamine at least twice, including one instance shortly before the hearing.

In support of his motion for an improvement period, petitioner testified that he did not submit to drug screens with the DHHR because he was frustrated that the screens he passed in his medically-assisted treatment program did not entitle him to visits with B.R.-1. When asked about his positive methamphetamine screen in July of 2020, petitioner indicated that he "didn't really do it," that he "don't know how it got in it," and that he "didn't pour meth out there and put it in [his] body [him]self." According to the record, when the DHHR presented its argument against an improvement period, petitioner left the hearing and did not return. The circuit court

noted that petitioner's conduct "show[ed] . . . he's not likely to fully participate" in an improvement period because it illustrated his refusal to address "the problems that brought him here." Based on the evidence, the court denied petitioner's motion for an improvement period.

Finally, in August of 2020, the circuit court held a dispositional hearing, during which the DHHR worker who supervised petitioner's drug screens testified that petitioner did not consistently submit to screens as ordered. The worker also testified that when petitioner did screen, he was positive for methamphetamine and Suboxone, the latter of which the worker could not verify was lawfully prescribed at the time. According to the worker, petitioner was not cooperative in confirming his participation in a medically-assisted treatment program. Petitioner brought in a Suboxone prescription at one screen, but the worker informed him that more detailed information, including executed releases and the name of the program was needed. The worker testified that he "couldn't even find out where [the program] was at when [he] would ask" petitioner. The worker also testified that petitioner was difficult to contact and refused transportation services to assist in his compliance. The witness further testified that petitioner had not visited B.R.-1 for several months because he could not pass two consecutive drug screens. According to the witness, he arranged other remote methods of communication for petitioner, but "there were several occasions that [the parents] called late at night or they appeared to be high," and they were not permitted to speak to the child.

Based on the evidence, the court found that petitioner was inconsistent in his submission to drug screens and that his failure to comply resulted in his inability to visit with B.R.-1. Additionally, the court found that petitioner failed to maintain regular contact with the DHHR, which went "above and beyond to assist the [parents] with the issues that led to the filing of the petition." Importantly, the court highlighted petitioner's failure to sign releases as the DHHR requested so that it could confirm his participation in a medically-assisted treatment program. According to the court, the DHHR could not confirm this participation until a witness appeared at the July of 2020 hearing, which was approximately nine months into the proceedings. As such, the court found that there was no evidence that petitioner meaningfully addressed the issues that led to the petition's filing or that he attempted to do so. Upon finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that it was necessary for the child's welfare, the court terminated petitioner's parental rights to B.R.-1.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire

_____

[2]The mother's parental rights were also terminated. The permanency plan for the child is adoption in the current foster home.

3

evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner raises two assignments of error[3], both predicated on his participation in a medically-assisted substance abuse treatment program. First, petitioner argues that the circuit court erred in failing to give substantial weight to the fact that he pursued this treatment on his own through a private provider rather than follow the DHHR's recommendation to seek drug screening and substance abuse treatment through the Logan County Day Report Center. Second, petitioner argues that the court erred in finding that there was no evidence to demonstrate that he meaningfully addressed the issues that led to the petition's filing, or had an intention to do so, given that he clearly sought assistance for his substance abuse issues. Upon our review, we find that neither of these arguments entitles petitioner to relief.

At the outset, we note that petitioner's arguments on appeal are predicated upon erroneous applications of both law and fact. For example, petitioner asserts that "the Department appeared to hold it against [p]etitioner as he refused to screen at Day Report *as [o]rdered by the [c]ourt* and chose to screen with his . . . provider." (Emphasis added). Underscoring petitioner's

---

[3]In support of his first assignment of error, petitioner asserts that the DHHR violated its duty to make reasonable efforts to preserve the family. However, petitioner provides no argument in support of this bald assertion and cites to no legal authority specifically addressing this issue. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that

> [t]he brief must contain an argument exhibiting clearly the *points of* fact and *law presented,* the standard of review applicable*, and citing the authorities relied on . . .* [and] must contain appropriate and specific citations to the record on appeal . . . . The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

(Emphasis added). Additionally, in an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, the Court specifically noted in paragraph two that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. Here, petitioner's brief in regard to this issue is inadequate as it fails to comply with West Virginia Rule of Appellate Procedure 10(c)(7) and our December 10, 2012, administrative order. Accordingly, the Court will not address this argument on appeal.

entire position on appeal is the idea that he was free to disregard the recommendations of the MDT, of which he was a participant, and the orders of the court below in favor of taking whatever steps he deemed appropriate to remedy the conditions of abuse and neglect at issue. Even more problematic, however, is the fact that petitioner willfully refused to provide corroborating evidence of his ongoing treatment or the results of his drug screens for approximately seven months. According to the record, petitioner's service provider requested that he execute releases so that the DHHR could confirm that he was, in fact, participating in a treatment program and was lawfully prescribed Suboxone. Despite these requests, petitioner never executed any releases, and the DHHR "did not know he was even in out-patient, medically-assisted treatment until [his medical provider] appeared to testify" at the hearing in July of 2020. Even more important, because petitioner had an admitted history of illegally purchasing Suboxone and would not execute releases for the DHHR, every drug screen that was positive for Suboxone was considered a failed screen, and his repeated failures precluded him from visiting with B.R.-1 throughout the proceedings. Indeed, as the circuit court found, petitioner did not have two consecutive clean screens throughout the entirety of the proceedings, resulting in petitioner not having seen B.R.-1 in several months. In short, petitioner willfully refused to cooperate with the DHHR for the majority of the proceedings to B.R.-1's detriment. That he now, on appeal, asserts that the DHHR appeared to hold his refusal to follow a court order against him is simply disingenuous, given that it was repeatedly explained to petitioner that he had to screen with the DHHR regardless of whether he screened with his provider, especially in light of the fact that petitioner refused to grant the DHHR access to his provider's records. This argument only further illustrates petitioner's willful refusal to take the minimum steps necessary to demonstrate his compliance with services designed to remedy the conditions of abuse and neglect.

As to petitioner's assertion that the circuit court did not give his participation substantial weight, we note that "[a]n *appellate court may not* decide the credibility of witnesses or *weigh evidence* as that is the exclusive function and task of the trier of fact." *State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995). As such, petitioner's attempt to undermine the specific weight the circuit court assigned to his participation in private substance abuse treatment below does not entitle him to relief on appeal, and this is especially true considering the fact that petitioner ignores substantial evidence in support of the circuit court's rulings. Critically, petitioner ignores the fact that, despite his participation in the treatment program, his provider testified that he tested positive for methamphetamine twice during his treatment with one positive screen occurring in July of 2020, just one month prior to the dispositional hearing. Therefore, regardless of whether petitioner was participating in that program, the evidence shows that his substance abuse continued. As such, we cannot find that the circuit court was in error when it found that petitioner had not taken steps to remedy the conditions of abuse and neglect at issue, given that his substance abuse persisted. Although it is true that petitioner attempted to address his substance abuse through treatment, the fact remains that he was unsuccessful. And while petitioner argues that the circuit court's findings are factually inaccurate because he did, in fact, take the step of submitting to this treatment, we note that West Virginia Code § 49-4-604(d)(1) provides that a circumstance in which there is no reasonable likelihood that a parent can substantially correct the conditions of abuse and neglect in the near future includes one in which the parent has "habitually abused or [is] addicted to . . . controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired[,] and the [parent] . . . [has]

not responded to or followed through [with] the recommended and appropriate treatment." Here, it is undisputed that petitioner did not respond to or follow through with his treatment, given his continued abuse of methamphetamine. As such, we find no error in the circuit court's findings regarding petitioner's refusal to correct the conditions of abuse and neglect at issue.

In support of both assignments of error, petitioner additionally argues that the circuit court erred in denying his multiple requests for an improvement period. However, petitioner fails to cite to the standard for obtaining an improvement period, which requires a parent to establish that they are likely to fully comply with the requirements thereof. W. Va. Code §§ 49-4-610(2)(B) and (3)(B). Petitioner's only argument in support of his assertion that he should have been entitled to an improvement period is his participation in the treatment program referenced above. Petitioner does not attempt, however, to explain how he could have satisfied this burden in light of his willful refusal to comply with the circuit court's orders regarding his participation in the abuse and neglect proceedings. Again, it must be stressed that although it is true that petitioner participated in a treatment program, he almost entirely abdicated his responsibility to participate in the abuse and neglect proceedings by failing to submit to drug screens, remain in contact with the DHHR, or participate in services that were provided outside his home. As the circuit court found, petitioner's participation was limited to in-home services because these services did not require him to "take any initiative to preserve [his] parental rights." Even more telling is the fact that petitioner left the hearing on his motion for an improvement period when faced with facts that he did not accept and did not return. As the circuit court found, this evidenced his unwillingness to fully commit to participation in services designed to remedy the conditions of abuse and neglect. Further, after his treatment provider testified that petitioner tested positive for methamphetamine in July of 2020, petitioner testified that he did not abuse the drug, did not know why he tested positive for it, and generally refused to accept responsibility for his ongoing drug addiction.

This Court has long held, "[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem . . . results in making the problem untreatable." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Given petitioner's refusal to accept responsibility for his continued substance abuse, we find no error in the circuit court's denial of his motions for an improvement period. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002) ("The circuit court has the discretion to refuse to grant an improvement period when no improvement is likely."). This is especially true when considering that petitioner's failure to take the minimum step of confirming his participation in the treatment program at issue prevented him from visiting B.R.-1 for months at a time. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). Had petitioner simply confirmed his participation in the program, as requested, his positive screens for Suboxone could have been confirmed to have been pursuant to a lawful prescription, and he could have exercised visitation with B.R.-1.

This same evidence supports the circuit court's termination of petitioner's parental rights. Given petitioner's refusal to acknowledge his ongoing substance abuse, in conjunction with his

failure to actively participate in the proceedings and comply with the circuit court's directions, it is clear that there was sufficient evidence upon which to base the circuit court's findings that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of his parental rights was necessary for B.R.-1's welfare. West Virginia Code § 49-4-604(c)(6) permits the termination of parental rights upon these findings. Further, as this Court has held,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the circuit court's termination of petitioner's parental rights.

Lastly, petitioner raises several arguments in regard to his participation in a medically-assisted substance abuse treatment program, many of which are predicated on his assertion that the circuit court and the DHHR were biased against such treatment. However, there is nothing in the record to support these assertions, and they are, accordingly, not necessary to address on appeal. Petitioner cites to West Virginia Code § 49-4-604(f), which provides that

> [t]he court may not terminate the parental rights of a parent *on the sole basis* that the parent is participating in a medication-assisted treatment program, as regulated in § 16-5Y-1 et seq., for substance use disorder, as long as the parent is successfully fulfilling his or her treatment obligations in the medication-assisted treatment program.

(Emphasis added). Petitioner goes on to acknowledge, however, that "the termination in his case was not based solely on the fact he was receiving treatment for his drug addiction." Indeed, the record shows that termination was not based on petitioner's participation in this program at all. As set forth above, the circuit court instead based termination upon petitioner's continued substance abuse and failure to participate in required services, among other issues. As such, none of petitioner's arguments related to any alleged bias against such treatment programs entitles him to relief.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 9, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: April 20, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton